<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

                                         )

RAYMOND PARDO,               )         Civil Action No.: 08-1311 (JLL)

                                     )

      Plaintiff,              )           **OPINION**

                                     )

v.                                )

                                   )

PORT AUTHORITY OF NEW YORK  )
AND NEW JERSEY and PORT      )
AUTHORITY POLICE DEPARTMENT,  )

                                   )

      Defendants.          )

_____)

**LINARES**, District Judge.

This matter comes before the Court by way of a motion to dismiss Plaintiff's Complaint filed by Defendant Port Authority of New York and New Jersey ("Port Authority") pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered the submissions made in support of and in opposition to the motion, and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Port Authority's motion is granted.

**I.       BACKGROUND**

Mr. Pardo applied for a position as a police officer with the Port Authority Police Department ("Police Department"). (Compl. ¶ 4.) On February 7, 2007, the Police Department made Mr. Pardo an offer of employment continent on satisfactory completion of written psychological testing, individual psychological interviews, medical evaluations, and other

standards pursuant to the Police Department's application booklet.  (Id. at ¶ 4 & Ex. A (letter from

Port Authority Human Resources).)  The Port Authority letter stated that failure to attend any

evaluation or testing appointments would "result in removal from the selection process."  (Id. at

Ex. A.)  The letter also noted that the Police Department was "one of the most unique law

enforcement teams in the nation" due to the special nature of the Port Authority.  (Id.)

On August 7, 2007, the Port Authority notified Mr. Pardo that "[t]he Port Authority's

Office of Medical Services . . . [was] unable to certify [him] for appointment to the position of

police officer."  (Id. at Ex. C.)  Mr. Pardo sought additional information from the Port Authority

regarding the reason for the denial of certification.  (Id. at ¶ 8.)  The Port Authority responded that

Mr. Pardo was "not medically certified for the position of Police Officer with The Port Authority

of New York and New Jersey . . .[because he] failed to meet the psychological requirements."  (Id.

at ¶ 9.)  Mr. Pardo requested copies of his psychological evaluation reports.  (Id. at ¶ 10.)  The

Port Authority refused this request, emphasizing that "the psychological screening process is

specific to the unique stressors and demands of a Port Authority police officer and does not mean

that you are not qualified for other positions either within or outside the Port Authority."  (Id. at ¶

11 & Ex. G)  In response, on September 21, 2007, Mr. Pardo's attorney informed the Port

Authority that Mr. Pardo had arranged independent psychological evaluations, that he believed

that he was fit for the position, and that they wanted "to settle our concerns without the necessity

of costly litigation."  (Id. at ¶ 13 & Ex. H)  On October 5, 2007, Mr. Pardo's attorney forwarded

the report of an independent psychologist who opined that Mr. Pardo was fit for duty as a police

officer.  (Id. & Ex. I)  The accompanying letter again stated that they attorney wanted "to settle

the matter without the necessity of costly protracted litigation," asking the Port Authority to "call

me with your position." (Id. at Ex. I.)  Mr. Pardo forwarded this psychological report to the Port

Authority.  (Id.)  The Port Authority responded that it did "not have an external procedure to

appeal psychological disqualifications for applicants."  (Id. at ¶ 15.)  Mr. Pardo again requested

copies of his psychological evaluations for use in a second psychological evaluation to be

arranged by him.  (Id. at ¶ 16.)  Again, the Port Authority refused to release the reports.  (Id.)  On

November 2, 2007, Mr. Pardo's attorney sent another letter to the Port Authority, stating that "[i]f

by the time we forward the second report to you, you do not revisit your position and allow my

client entry, we will file suit and request all fees associated herewith."  (Id. at Ex. L.)

Mr. Pardo subsequently filed this action in New Jersey state court on January 25, 2008,

asserting claims for breach of contract, violation of his substantive and procedural due process

rights, and violation of New Jersey's Open Public Records Act.  He seeks monetary and injunctive

relief.  The Port Authority removed the case to this Court on March 13, 2008, and presently

moves to dismiss Mr. Pardo's Complaint in its entirety.

## II.     LEGAL STANDARDS

On a motion made pursuant to Federal Rule of Civil Procedure 12(b)(6) courts must

accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in

favor of the non-moving party.  See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir.

2008).  But, "[f]actual allegations must be enough to raise a right to relief above the speculative

level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Wilkerson v. New Media

Tech. Charter Sch. Inc., 522 F.3d 315, 321 (3d. Cir. 2008).  Thus, "'stating . . . a claim requires a

complaint with enough factual matter (taken as true) to suggest' the required element."

Wilkerson, 522 F.3d at 322 (quoting Twombly, 550 U.S. at 556).  Courts are not required to credit

bald assertions or legal conclusions draped in the guise of factual allegations.  See In re

Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997).

## III.    DISCUSSION

### A.    Jurisdiction Over Mr. Pardo's Claims for Monetary and Injunctive Relief

The Port Authority argues that "[t]he Complaint seeking monetary and injunctive relief is

barred by [Mr. Pardo's] failure to comply with the limited waiver of sovereign immunity and

consent to suit as set forth at N.J.S.A. 32:1-157 et seq. and N.Y. Unconsol. Laws Section 7101 et

seq."  (Mem. of Law in Supp. of Def. Port Authority of New York and New Jersey's Mot. for

Dismissal of the Compl. Pursuant to R. 12(b)(6) at 11 [hereinafter "Def. Mem."].)  "Under the

doctrine of sovereign immunity, suits against the Authority may not be maintained without the

concurring consent of New York and New Jersey."  Port Authority of N.Y. & N.J. v. Airport Auto

Servs., Inc., 934 A.2d 665, 667 (N.J. Super. Ct. App. Div. 2007) (citing N.J. Stat. Ann. §

32:1-157).  Thus, in order to bring suit for claims such as breach of contract, certain conditions

must be met.  Id.

> For suits seeking monetary relief, the relevant statutes state:

> The foregoing consent is granted upon the condition that any suit, action or
> proceeding prosecuted or maintained under this act shall be commenced within one
> year after the cause of action therefor shall have accrued, and upon the further
> condition that in the case of any suit, action or proceeding for the recovery or
> payment of money, prosecuted or maintained under this act, a notice of claim shall
> have been served upon the Port Authority by or on behalf of the plaintiff or plaintiffs
> at least sixty days before such suit, action or proceeding is commenced. . . .

N.J. Stat. Ann. § 32:1-163; N.Y. Unconsol. L. § 7107. Additionally, § 32:1-164 provides the

specific requirements for a notice of claim.

> The notice of claim required . . . shall be in writing, sworn to by or on behalf of the

claimant or claimants, and shall set forth (1) the name and post-office address of each claimant and of his attorney, if any, (2) the nature of the claim, (3) the time when, the place where and the manner in which the claim arose, and (4) the items of damage or injuries claimed to have been sustained so far as then practicable. Such notice may be served in the manner in which process may be served, or in lieu thereof, may be sent by registered mail to the Port Authority at its principal office. . . .

N.J. Stat. Ann. § 32:1-164.

Mr. Pardo argues that notice of claims are only required in tort actions, but that even if one was required, he substantially complied with the requirements. (Opp'n at 20-21.) Section 32:1-163 contains no language limiting its applicability to tort claims, and the court in Airport Auto specifically stated that the section is applicable to breach of contract claims, such as asserted by Mr. Pardo. Therefore, the Court finds that a notice of claim was required before bringing suit.

Mr. Pardo did not comply with the specific rules of § 32:1-164, rather he argues that he substantially complied with them and that is sufficient. The New Jersey Supreme Court has held that less than strict compliance may satisfy the requirement. See Zamel v. Port of New York Authority, 264 A.2d 201 (N.J. 1970). In Zamel, the plaintiff's attorney immediately reported the accident at issue and he wrote letters to the defendant with information of the accident, informing them of his client's position that the accident was due to their negligence and inquiring about settlement. Id. at 201-02. However, he only provided defendant with a "Notice of Claim" letter one month before filing suit. Id. at 202. The court held that under these facts the plaintiff had substantially complied with the notice requirements and, thus, suit was not barred. Id. at 203-04. In Airport Auto, the court held that the plaintiff had not substantially complied with the requirements because, unlike in Zamel, "[a]ll it did was submit invoices in the regular course of its business." 934 A.2d at 668. The court noted that in Zamel the correspondence from the

plaintiff's attorney provide defendant with "substantially all the information 'well in advance of the sixty-day period prior to the filing of the complaint,' and sufficient time 'for investigation, reasonable opportunity for the preparation of its defense, and reasonable opportunity to effect a settlement before institution of the suit.'" Id. (quoting Zamel, 264 A.2d at 204); see also Brown v. Port Authority Police Superior Officers Ass'n, 661 A.2d 312, 318 (N.J. Super. Ct. App. Div. 1995) (finding no substantial compliance where "plaintiffs failed to submit any of the claims information required by N.J.S.A. 32:1-164 to the Port Authority prior to filing suit" creating a situation where "the Port Authority had no advance notice prior to [the date of suit] that plaintiffs were contemplating filing suit and thus had no opportunity to investigate the claim or engage in settlement discussions").

The facts here are similar to Zamel, except that Mr. Pardo's attorney does not appear to have ever submitted a sworn statement of his claim to the Port Authority. Mr. Pardo filed suit in state court on January 25, 2008. As early as September 21, 2007, over four months before filing suit, Mr. Pardo's attorney notified the Port Authority of his client's disagreement with their hiring determination, he informed them he would be providing them with additional information in support of their position, and he stated that he wanted "to settle our concerns without the necessity of costly litigation." He repeated this position on October 5, 2007, when he provided the independent psychological evaluation to the Port Authority. Then on November 12, 2007, still more than sixty days before suit was filed, his attorney sent another letter stating that "[i]f by the time we forward the second report to you, you do not revisit your position and allow my client entry, we will file suit and request all fees associated herewith." The suit filed relies almost solely on the correspondence between Mr. Pardo and the Port Authority and the independent

psychological evaluation forwarded to the Port Authority.  Thus, the Port Authority had all of the

information presented in this suit more than sixty days before suit was filed and it had numerous

opportunities to settle.  Therefore, this Court finds that, under the facts of this case, Mr. Pardo

substantially complied with the notice requirement; his claim for monetary damages is not barred.

> For suits seeking injunctive relief, the relevant statutes state:

> The foregoing consent does not extend to suits, actions or proceedings for judgments,
> orders or decrees restraining, enjoining or preventing the Port Authority from
> committing or continuing to commit any act or acts, other than suits, actions or
> proceedings by the Attorney-General of New York or by the Attorney-General of
> New Jersey----each of whom is hereby authorized to bring such suits, actions or
> proceedings in his discretion on behalf of any person or persons whatsoever who
> requests him so to do . . . .

N.J. Stat. Ann. § 32:1-161; N.Y. Unconsol. L. § 7105.  Under this section, suit may not be

brought by a private person for injunctive relief, only the Attorney Generals of New York or New

Jersey are authorized to bring such actions.  Thus, an Attorney General for one of the states is a

necessary party.  See Evans-Aristocrat Industries, Inc. v. Newark, 380 A.2d 268, 274 (N.J. 1977)

("If the Attorney General has not brought or joined the suit, or should he withdraw from the

litigation, leaving only a private person as a claimant, this will necessarily conclude the matter and

abort the action.").  Here, the Attorney General did not bring or join the suit.  Therefore, Mr.

Pardo's suit for injunctive relief against the Port Authority is barred.

## B.     Breach of Contract Claim

Mr. Pardo asserts in his Complaint that the Port Authority breached an employment

contract with him by "withdraw[ing] [his contingent offer of employment] for all the wrong

reasons and without legal justification."  (Compl. ¶ 18.)   Mr. Pardo's offer of employment was

made expressly contingent on the satisfactory completion of psychological and medical testing

and evaluations.  The offer also stated that failure to comply with the offer requirements would "result in removal from the selection process."  (Id. at Ex. A.)  Thus, it is clear that the evaluations were part of the *selection* process and that his employment with the Port Authority never commenced since the Port Authority determined that his evaluation results did not meet their employment requirements.  However, in some instances, a claim may be based on the revocation of a job offer.  In New Jersey, such a claim may arise, for example, "where there is denial of a good faith opportunity to perform after a prospective employee has resigned from an existing position in reliance upon a firm offer."  Bonczek v. Carter-Wallace, Inc., 701 A.2d 742, 745 (N.J. Super. Ct. App. Div. 1997).  On the other hand, in New York, such facts may not be sufficient to state such a claim.  Id.  Both parties address Mr. Pardo's breach of contract claim only in passing and neither address which law should apply to this claim.  However, in his Compliant, Mr. Pardo pleads only that he was given a *contingent* job offer and that the Port Authority determined that he had not satisfied the contingency.  Thus, given the facts as plead in the Complaint, which are not sufficient to state a claim even in New Jersey, it is unnecessary at this time to resolve any conflict of law issue.  See id. at 746.  The Court, therefore, dismisses Mr. Pardo's breach of contract claim without prejudice.

### C.       Substantive and Procedural Due Process Claims

Mr. Pardo argues that in withdrawing his employment offer without providing him the requested evaluations or a hearing, the Port Authority violated his substantive and procedural due process rights and "took from him any property interest he had enjoyed by virtue of his employment with the Port Authority Police Department."  (Compl. ¶¶ 20-21.)

1.      Substantive Due Process Claim

"[W]hen a plaintiff challenges a non-legislative state action (such as an adverse

employment decision), [a court] must look, as a threshold matter, to whether the property interest

being deprived is 'fundamental' under the Constitution." Nicholas v. Pa. State Univ., 227 F.3d

133, 142 (3d Cir. 2000) (holding that tenured public employment is not a fundamental property

interest entitled to substantive due process protection); see also Hill v. Borough of Kutztown, 455

F.3d 225, 234 n.12 (3d Cir. 2006).  Thus, substantive due process claims do not arise for non-

fundamental interests.  See Nicholas, 227 F.3d at 142.  Additionally, the United States Supreme

Court "has always been reluctant to expand the concept of substantive due process," noting that

"[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are

asked to break new ground in this field." Collins v. City of Harker Heights, 503 U.S. 115, 125

(1992); see also Nicholas, 227 F.3d at 141 (stating that the Third Circuit has been reluctant to

extend non-legislative substantive due process protection to property rights less fundamental than

those involving real property).  Here, Mr. Pardo was merely an applicant for employment.  Clearly

an applicant for employment, or even an applicant with a contingent offer of employment, has less

of an interest than a tenured employee.  Therefore, Mr. Pardo fails to assert an interest that is

fundamental.  The Court dismisses his substantive due process claim with prejudice.

2.      Procedural Due Process Claim

Mr. Pardo asserts that he was disqualified from employment with the Port Authority based

on one or more perceived "psychological maladies discovered during some undisclosed testing."

(Mem. of Law in Opp'n to Def's, Port Authority of New York and New Jersey, Mot. to Dismiss

the Compl. Pursuant to R. 12(b)(6) at 9 [hereinafter "Opp'n"].)  He argues that he has a right to

receive the results of any and all pre-employment medical and psychological testing, and that this

right creates a procedural due process interest in the application process.  He further argues that

distinct from his right to the evaluation records is his "entitlement to a complete, thorough and

lawful medical and psychological screening process" that is conducted in accord with "the

recognized industry standards for all law enforcement officers."  (Opp'n at 14.)  Thus, he appears

to assert two different basis for his procedural due process claims: (1) the right to his evaluation

records, and (2) the right to evaluations conducted in accordance with industry standards for law

enforcement officers.

        To state a procedural due process claim, a plaintiff must first allege that "he was deprived

of an individual [life, liberty, or property] interest." Hill, 455 F.3d at 234.  Here, Mr. Pardo

asserts a property interest in the evaluation records and the Port Authority employment.  "To have

a property interest in a job . . . a person must have more than a unilateral expectation of continued

employment; rather, she must have a legitimate entitlement to such continued employment." Id.

(alteration in original) (holding that an at-will employee did not have a protectable property

interest in employment).  Whether a person has a legitimate entitlement to property is generally

determined by reference to state law." Id.  However, "[p]roperty interests . . . can also arise from

written or unwritten state or local government policies or from 'mutually explicit understandings'

between a government employer and employee." Baraka v. McGreevey, 481 F.3d 187, 206 (3d

Cir. 2007) (alteration in original) (quoting Stana v. Sch. Dist. of Pittsburgh, 775 F.2d 122, 126 (3d

Cir. 1985)).

        a.      *Right to Evaluation Records*

        Mr. Pardo argues that his entitlement to receive the results of the psychological

evaluations is clear from New Jersey state law.  He points to three sources of New Jersey law in support of his position: medical malpractice case law, New Jersey Administrative Code § 13:35-6.5(f), and New Jersey Court Rule 4:10-2(d)(1).[1]  (See Opp'n at 12.)

In New Jersey, a "physician in the exercise of his profession [who] examin[es] a person at the request of an employer owes that person a duty of reasonable care."  Reed v. Bojarski, 764 A.2d 433, 441 (N.J. 2001).  Thus,

> when an individual is required, as a condition of future or continued employment, to submit to a medical examination, that examination creates a relationship between the examining physician and the examinee, at least to the extent of the tests conducted. This relationship imposes upon *the examining physician* a duty to conduct the requested tests and diagnose the results thereof, exercising the level of care consistent with the doctor's professional training and expertise, and to take reasonable steps to make information available timely to the examinee of any findings that pose an *imminent danger* to the examinee's physical or mental well-being.

Id. at 442 (emphasis added) (quoting Ranier v. Frieman, 682 A.2d 1220, 1224 (N.J. Super. Ct. App. Div.1996)).  Reed recognized this duty in the context of medical malpractice litigation.  Id. at 439.  As the Port Authority argues, medical malpractice claims are very different than the claim Mr. Pardo makes here.  The question in cases such as Reed is whether, under negligence theories of liability, a *physician* owes a duty to a patient when referred by a third party.  The question is not whether the patient has a procedural due process right to records from the third party, but rather whether the examining physician must warn the patient of "a potential serious illness" if discovered.  Here, Mr. Pardo is not bringing a claim against the examining physicians, he is

---

[1]The Port Authority, a bi-state entity, argues that New Jersey legislation is not applicable to the Port Authority unless authorized by the Compact governing it.  See also infra III.D. (discussing the applicability of New Jersey's Open Public Records Act to the Port Authority). Because the Court finds that Mr. Pardo has not plead sufficient facts to state a claim of a right to the evaluation records under New Jersey law, it is unnecessary at this time to reach the additional question of whether these New Jersey laws apply to the Port Authority.

bringing a procedural due process claim against the Port Authority. Also, no evidence has been

submitted that any mental illness, much less a serious one, was discovered during the evaluations.

In fact, Mr. Pardo had an independent psychological evaluation that appears to have found that he

did not suffer from any mental illness. The Port Authority's position, as expressed in its letters to

Mr. Pardo, was simply that its hiring criteria was not met; the Port Authority made clear that its

determination did not mean that Mr. Pardo would not be qualified for other jobs either within or

without the Port Authority. Thus, Mr. Pardo has not stated a claim based on this line of New

Jersey state law.

Next, Mr. Pardo points to New Jersey Administrative Code § 13:35-6.5(f) to support his

claimed entitlement to the evaluation records. The Court in Reed stated that this section

"describes [New Jersey] public policy regarding the scope and extent of the duty a physician owes

to a person he or she examines at the behest of a third party." Id. at 443. This section provides:

> Where a third party or entity has requested examination, or an evaluation of an
> examinee, the licensee rendering those services shall prepare appropriate records
> and maintain their confidentiality, except to the extent provided by this section. The
> licensee's report to the third party relating to the examinee shall be made part of the
> record. The licensee shall:
> 1. Assure that the scope of the report is consistent with the request, to avoid the
> unnecessary disclosure of diagnoses or personal information which is not pertinent;
> 2. Forward the report to the individual entity making the request, in accordance with
> the terms of the examinee's authorization; if no specific individual is identified, the
> report should be marked "Confidential"; and
> 3. Not provide the examinee with the report of an examination requested by a third
> party or entity unless the third party or entity consents to its release, except that
> should the examination disclose abnormalities or conditions not known to the
> examinee, the licensee shall advise the examinee to consult another health care
> professional for treatment.

N.J. Admin. Code tit. 13, § 13:35-6.5(f) (2009).

The Port Authority argues that even if the statute does apply to the Port Authority, it does

not support Mr. Pardo's procedural due process claim of entitlement to the evaluation records

from the Port Authority.  Like the medical malpractice case law, this section concerns the duty a

physician owes to a person he examines.  Additionally, this section makes clear that the general

rule is non-disclosure; the section states that "[t]he licensee shall . . . [n]ot provide the examinee

with the report . . . unless the third party or entity consents to its release."  Only if the examination

discloses abnormalities or conditions not known to the examinee, should the licensee breach the

confidentiality, and then his duty is to *advise* the examinee to consult another health care

professional.  Again, there is no evidence that the evaluations uncovered any physical or mental

abnormality.  Rather, the facts as asserted by Mr. Pardo only show that, based on the evaluations,

the Port Authority determined that Mr. Pardo did not meet its psychological hiring criteria.  Plus,

even if some abnormality had been discovered, Mr. Pardo would not be entitled to the records

under this section, he would be entitled to have the examiner advise him to consult another

physician.  In this case, Mr. Pardo did consult another psychologist, whose report did not find any

abnormality.

    Finally, Mr. Pardo points to New Jersey Court Rule 4:10-2(d)(1) to support his position.

This rule is a discovery rule regarding expert reports involved in litigation.  This rule provides:

> A party may through interrogatories require any other party to disclose the names and
> addresses of each person whom the other party expects to call at trial as an expert
> witness, including a treating physician who is expected to testify and, whether or not
> expected to testify, of an expert who has conducted an examination pursuant to R.
> 4:19 or to whom a party making a claim for personal injury has voluntarily submitted
> for examination without court order. The interrogatories may also require, as
> provided by R. 4:17-4(a), the furnishing of a copy of that person's report. . . .

N.J. Ct. R. 4:10-2(d)(1) (2009).  Mr. Pardo cites to Rincon v. Delapaz for support.  In Rincon, a

case discussing this rule, the court stated that "the examined party has a legitimate and compelling

interest transcending the litigation in knowing what the results of the examination were." 653

A.2d 1205, 1207 (N.J. Super. Ct. App. Div. 1995) (quoting Pressler, Current N.J. Court Rules,

comment 10 on R. 4:10-2(d)(1995)).  He also cites to Koutsouflakis v. Schirmer in support of his

position.  588 A.2d 893 (N.J. Super. Ct. Law. Div. 1991).  However, the court in Koutsouflakis

noted that "Judge Pressler's comments in the annotations to Rule 4:10-2(d) explain why the

reports of experts *resulting from court ordered examinations* are discoverable as distinguished

from those which do not result from a court order." Id. at 896 (emphasis added).  The court in

Rincon also noted that "examination[s] . . . required under compulsion [are] an invasion of

privacy." 653 A.2d at 1207.  This is simply not the case here.  Aside from the fact that the records

at issue are not those of an litigation expert, the evaluations were not conducted under any

compulsion, court ordered or otherwise.  Mr. Pardo argues that he was compelled–he states that

there was no "option to 'opt out' from the[] requirements." (Opp'n at 14.)  However, the testing

was merely part of an application process; he could have declined the tests at any time.  Although

he would have been removed from the selection process, this is hardly comparable to a court

ordered medical examination for litigation.

This Court finds that none of the authorities relied on by Mr. Pardo supports his claim of a

legitimate entitlement to the evaluation records given the facts plead in the Complaint.  Because

this Court finds that Mr. Pardo has failed to state a claim that he had a right to the evaluations, it

need not reach the additional question of whether if such a right existed it would create a

procedural due process property interest in the application process.

       *b.*     *Right to Evaluations Conducted in Accordance with Industry Standards*

Mr. Pardo appears to argue that the Port Authority is limited in the discretion it could

exercise with respect to his evaluations.  He asserts that the Port Authority agreed to conduct the

evaluations in accordance with "recognized industry standards for all law enforcement officers,"

implying that there is some objective criteria for evaluating applicants.  He argues that the Port

Authority did not conduct the evaluations in accord with this criteria, as evidenced by his

independent psychological evaluation that opined that he was fit for duty as a police officer.  Here,

Mr. Pardo's argument is not based on reference to state law, but rather on an assertion of mutual

agreement or understanding with the Port Authority.

     In Stana v. School District of Pittsburgh, the Third Circuit held that a teacher had a

legitimate entitlement to remain on a hiring eligibility list and that removal from the list without

notice and opportunity to be heard violated her due process rights.  775 F.2d 122, 126-27 (3d Cir.

1985).   The court based the entitlement not on state law, which it held did not confer such a right,

but rather on a mutual understanding between the school district and eligible teachers.  Id. at 126.

The mutual understanding was held to exist due the school district's "established policy for

placement and rank on the [hiring] list and for maintenance of names on that list for a specified

period of time."  Id.  Here, Mr. Pardo argues that the mutual understanding or agreement was

"memorialized" in the letters from the Port Authority requiring him to submit to the examinations

in order to continue the selection process.  He states that the letters "required [him] to submit to a

battery of 'written psychological testing, individual psychological interviews and medical

evaluations.'"  (Opp'n at 14.)

     First, by statute pursuant to the Compact governing the Port Authority, the Port Authority

is authorized to establish the qualifications required of its employees.  See N.J. Stat. Ann. §

32:1-15 (2009).  Where applicable state law has granted a government employer broad hiring

discretion, the Third Circuit has found pre-employment screening not to violate an applicant's due process rights.  See, e.g., Anderson v. Philadelphia, 845 F.2d 1216, 1220-21 (3d Cir. 1988) (holding that the use of a polygraph for pre-employment screening by defendant city officials regarding employment with the city police and correctional departments did not constitute a due process violation).  Next, contrary to Mr. Pardo's assertion, the letters from the Port Authority do not mention anything about the use of standardized evaluation criteria.  Rather, the letters emphasize the uniqueness of the position.  Mr. Pardo has asserted no facts other than those contained in the Port Authority letters attached to the Complaint that he had reached any understanding with the Port Authority or its representatives regarding the evaluation criteria.  Thus, this Court finds that Mr. Pardo has not plead facts that could establish a mutual understanding with the Port Authority that would trigger due process protections.

Finally, Mr. Pardo argues that by not using the required industry standard, if one exists, the Port Authority is excluding him from an occupation, citing, for example, Scott v. Educational Testing Services, 600 A.2d 500 (N.J. Super. Ct. App. Div. 1991).  The court in Scott held that "[s]tate actors must afford due process to persons seeking admission to a profession or occupation."  Id. at 504 (citing Schware v. Bd. of Bar Examiners, 353 U.S. 232, 238-39 (1957)).  Aside from the lack of facts showing that the Port Authority was required to evaluate him using some industry standard, Mr. Pardo applied for a position with one police department.  Rejection for that position does not bar him from access to any profession or occupation.  Thus, the Court finds this argument to be meritless.

Based on the foregoing, this Court finds that Mr. Pardo also has not plead facts sufficient to establish a legitimate entitlement to examinations conducted according to a standardized law

enforcement criteria.  Therefore, this Court dismisses his procedural due process claims without

prejudice.

      **D.**      **New Jersey Open Public Records Act Claim**

      The Complaint finally alleges that the Port Authority, "by not providing to the plaintiff all

documents requested, . . . violated the provisions of . . . the New Jersey Open Public Records

Act." (Compl. ¶ 22.)  The New Jersey Open Public Records Act (the "Act") provides that:

> The Legislature finds and declares it to be the public policy of this State that: . . .
> government records shall be readily accessible for inspection, copying, or
> examination by the citizens of this State, with certain exceptions, for the protection
> of the public interest, and any limitations on the right of access accorded by P.L.
> 1963, c. 73 (C. 47:1A-1 et seq.) as amended and supplemented, shall be construed
> in favor of the public's right of access; . . . .

N.J. Stat. Ann.§ 47:1A-1 (2009).  The Port Authority argues that this argument fails as a matter of

law because the Act is a unilaterally enacted state law that does not apply to the Port Authority, a

bi-state agency created by Compact between New York and New Jersey.  This Court agrees.

      "The Port Authority was created in 1921 by a Compact between New York and New

Jersey, which was consented to by Congress." King v. Port Auth., 909 F. Supp. 938, 943 n.4

(D.N.J. 1995), aff'd 106 F.3d 385 (3d Cir 1996).  "[T]he Compact prohibits one state from

unilaterally imposing duties on the Port Authority without the concurrence of the sister state." Id.

at 944 (citing N.J. Stat. Ann. § 32:1-8).  Thus, "a single state's law may only be applied when the

compact itself states that the bi-state entity is subject to single-state jurisdiction." Id. (citing E.

Paralyzed Veterans Ass'n v. Camden, 545 A.2d 127, 132-33 (N.J. 1988); see also Dezaio v. Port

Auth., 205 F.3d 62, 66 (2d Cir. 2000) (citing King and quoting Hess v. Port Auth. Trans-Hudson

Corp., 513 U.S. 30, 42 (1994) ("[B]istate entities created by compact . . . are not subject to the

unilateral control of any one of the States that compose the federal system.")).  In <u>King</u> the court

held that the New Jersey Law Against Discrimination could "only be applied to the Port Authority

if New York has concurrently adopted the same legislation or if the states have similar legislation

which purport to apply to the Port Authority."  909 F. Supp. at 945 (holding that "[s]ince neither

of these situations is present, [the] LAD may not be applied to the Port Authority").

Here, Mr. Pardo asserts a claim under and relies solely on New Jersey's Open Public

Records Act; he asserts no claim that an analogous New York law purporting to apply to the Port

Authority also supports access to the records on the facts plead.  Therefore, Mr. Pardo's claim

pursuant to the Act is dismissed without prejudice.

### E.      Other Port Authority Arguments

The Port Authority also argues that the action is untimely under New Jersey Court Rule

4:69-6, and that Mr. Pardo's claim for punitive damages must be dismissed.

#### 1.      <u>New Jersey Court Rule 4:69-6</u>

This rule provides that:

> No action in lieu of prerogative writs shall be commenced later than 45 days after the
> accrual of the right to the review, hearing or relief claimed, except as provided by
> paragraph (b) of this rule.

N.J. Ct. R. 4:69-6(a) (2009).  Mr. Pardo argues that this rule only applies to final agency action,

which is not present here.  However, the Port Authority has persuasively argued with regard to

other issues that it is a special bi-state entity not subject to single state legislation and rules unless

agreed by both states.  Yet, for this argument it provides no authority supporting its position that

this particular New Jersey Rule applies where the others did not.  Because the Court is dismissing

the Complaint, it finds it unnecessary to resolve this question at this time.

2.        Punitive Damages

This Court agrees with the Port Authority that it is settled law in the Third Circuit that it

"may not be assessed punitive damages."  See King v. Port Auth., 909 F. Supp. 938, 947 (D.N.J.

1995), aff'd 106 F.3d 385 (3d Cir 1996).  Therefore, Mr. Pardo's claims for punitive damages are

dismissed with prejudice.

**IV.      CONCLUSION**

        For the reasons discussed herein, this Court finds that Mr. Pardo has failed to state any

claim.  It additionally finds that his claims for injunctive relief and punitive damages are barred.

Therefore, this Court grants the Port Authority's motion to dismiss the Complaint.  Mr. Pardo's

breach of contract, procedural due process, and New Jersey Open Public Records Act claims are

dismissed without prejudice.  His substantive due process claim and claims for injunctive relief

and punitive damages are dismissed with prejudice.  An appropriate Order accompanies this

Opinion.

DATED: March 9, 2009                              /s/ Jose L. Linares
                                                  JOSE L. LINARES
                                                  UNITED STATES DISTRICT JUDGE

Page 19 of  19